**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shawnna Wilcoxson, | No. CV-23-00436-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Shawnna Wilcoxson ("Plaintiff") seeks this Court's review of the Social Security Administration ("SSA") Commissioner's (the "Commissioner") denial of her application for Social Security Disability Insurance ("SSDI") benefits. (Doc. 8 at 1). The matter is fully briefed. (Docs. 12; 13). Upon review of the briefs and the Administrative Record (Docs. 6–7, "AR"), the Court affirms.

**I.   Background**

Plaintiff filed for SSID benefits and alleged a disability onset date of June 15, 2016. (AR at 14). These claims were denied by the Commissioner. (*Id*.) Afterward, the Administrative Law Judge (the "ALJ") held a telephonic hearing to determine whether Plaintiff was disabled. (*Id*.) The ALJ concluded that Plaintiff was not disabled under the Social Security Act ("the Act") from the alleged onset date through the date last insured. (*Id*. at 16). To reach this conclusion, the ALJ utilized a five-step process developed by the SSA for determining whether an individual is disabled. (*Id*.)

/ / /

### A. The ALJ's Five-Step Process

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The ALJ follows a five-step process[1] to determine whether a claimant is disabled for purposes of the Social Security Act ("the Act"):

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity"[2] in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013); *see also* 20 C.F.R. § 404.1520(a)–(g). If the ALJ determines no such work is available, the claimant is disabled. *Id.* § 404.1520(a)(4)(v).

At the first and second steps of inquiry, the ALJ concluded that (1) Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability through her date last insured of September 30, 2021, and (2) that she had several severe impairments, including: multi-level degenerative disc disease; fibromyalgia; obesity; migraine

---

[1] The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett*, 180 F.3d at 1098.

[2] A claimant's "residual functional capacity" is defined as their ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

headaches; and occipital neuralgia[3]. (AR at 16-17). At the third step, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id.* at 29).

At step four, the ALJ concluded that Plaintiff had the following residual functional capacity ("RFC") through her date last insured:

> [Plaintiff] had the residual functional capacity to perform a range of light work as defined in 20 C.F.R. § 404.1567(b). Specifically, the claimant could lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently; stand and/or walk for 4 hours in an 8-hour day and sit for 6 hours per 8-hour workday with normal breaks. The claimant could never climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs, stoop, crouch, kneel, and balance as defined in the Dictionary of Occupational Titles (DOT). She could occasionally reach overhead bilaterally. She could work with occasional concentrated exposure to non-weather-related extreme cold, and non-weather-related extreme heat; occasional exposure to excessive loud noise; occasional exposure to excessive vibration; occasional concentrated exposure to pulmonary irritants, such as fumes, odors, dust, gases; occasional concentrated exposure to poorly ventilated areas; occasional exposure to dangerous moving machinery; and occasional exposure to unprotected heights. She can wear sunglasses or shaded lenses at work.

(*Id.* at 18). In determining Plaintiff's RFC, the ALJ stated that it "considered all [of Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and 416.929 and S.S.R. 16-3p." (*Id.*) The ALJ also stated it considered the medical opinions and prior administrative medical findings in accordance with the requirements of 20 C.F.R. §§ 404.1520c and 416.920c. (*Id.*)

Finally, at step five, the ALJ found that, through the date last insured, Plaintiff was unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 23). These jobs include office helper, cashier with a stool and photocopy machine operator. (*Id.* at 24).

---

[3] The Commissioner notes that occipital neuralgia is a "neurological condition involving pain and headache[s]." (Doc. 12 at 3 n.1).

Based on this five-step evaluation process, the ALJ ultimately concluded Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from June 15, 2016, the alleged onset date, through September 30, 2021, the date last insured." (*Id.*)  Now, the Court must determine whether the ALJ's decision was erroneous.

## II.     Standard of Review

In determining whether to reverse a decision by an ALJ, the district court reviews only those issues raised by the party challenging the decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The court may set aside the Commissioner's disability determination only if the determination is not supported by "substantial evidence" or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole.  *Id*.  Substantial evidence is the type of evidence that would suffice, at trial, to avoid a directed verdict.  *See Nat'l Labor Relations Bd. v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence."  *Orn*, 495 F.3d at 630.  The ALJ must "set forth the reasoning behind its decisions in a way that allows for meaningful review."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). While the Court is required to examine the whole record, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Id.* at 954 (citations omitted).

/ / /

**III. Discussion**

Plaintiff argues the ALJ erred by (1) improperly addressing the medical opinion evidence; (2) improperly addressing Plaintiff's symptom testimony; (3) improperly addressing lay witness testimony; and (4) failing to support its step-five finding with substantial evidence. (Doc. 8 at 1). The Commissioner argues that all the ALJ's findings, and its ultimate decision, are supported by substantial evidence. (Doc. 12 at 1–2). The Court will address each of Plaintiff's arguments in turn.

**A. The Medical Opinion Evidence**

Plaintiff first argues that the ALJ failed to assess each medical opinion based on its supportability and consistency with the evidence as required by 20 C.F.R. § 404.1520c(b)(2). (Doc. 8 at 8). Plaintiff specifically argues that the ALJ failed to properly consider the opinions of Doctors Steven C. Poletti and Swaraj Singh. (*Id*. at 13). The Court disagrees and will affirm as the ALJ's decision is supported by substantial evidence.

**1. Legal Standard**

The SSA recently revised its regulations regarding the evaluation of medical evidence from medical providers. *See* 20 C.F.R. § 416.920c. The updated regulations apply to this case since Plaintiff filed her claim after March 27, 2017. *See* § 416.920c; (AR at 14 (Plaintiff filed her claim on September 10, 2020)). The new regulations state:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are *supportability* (paragraph (c)(1) of this section) and *consistency* (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 416.920c (emphasis added).[4] An ALJ no longer needs to articulate "specific

---

[4] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, frequency of examinations, purpose and extent of the treatment relationship, and the specialization of the provider. 20 C.F.R. § 416.920c.

- 5 -

and legitimate reasons" for rejecting a treating or examining doctor's opinion. *Woods*, 32 F.4th at 792. "Now, an ALJ's decision . . . to discredit *any* medical opinion, must simply be supported by substantial evidence." *Id*. at 787 (emphasis added).

Even under the new regulations, however, an ALJ "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id*. § 404.1520c(b)(2)." *Id*. at 792. The SSA regulations provide that the most important factors to consider when evaluating the persuasiveness of medical opinions are "supportability" and "consistency." 20 C.F.R. § 404.1520c(a). Supportability means "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence." *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). Consistency is "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). *Woods* makes clear that to properly reject a medical opinion under the substantial evidence standard, the ALJ "must articulate how persuasive it finds all the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id*. (quoting 20 C.F.R. § 404.1520c(b)).

Thus, the narrow issue before the Court is whether the ALJ provided an explanation supported by substantial evidence when rejecting Dr. Poletti and Dr. Singh's medical opinions.

### 2. Dr. Poletti

Plaintiff argues that the ALJ erred by discounting Dr. Poletti's opinion because he was the surgeon who performed Plaintiff's spinal fusion surgery and his "ultimate conclusions are supported by extensive treatment notes and are not limited to a conclusory 'check-box' form." (Doc. 8 at 10). The Commissioner argues that the ALJ's decision to

discount Dr. Poletti's opinion is supported by substantial evidence because the form supporting his opinion in the record "contains virtually no explanation for Dr. Poletti's highly restrictive limitations." (Doc. 12 at 15). Reviewing Dr. Poletti's opinion itself, as the Court must upon a whole record review, the Court finds in favor of the Commissioner.

The ALJ did not find the opinions of Dr. Poletti, Plaintiff's treating physician, persuasive. (AR at 22). Dr. Poletti opined that Plaintiff could do sedentary work, but not bend, twist, lift, carry, push and pull, and must alternate between sitting and standing. (*Id.*) The ALJ noted that Dr. Poletti's opinions were limited to "checked boxes on a form with minimal explanation." (*Id.*)

Plaintiff argues that Dr. Poletti's opinions are "supported by extensive treatment notes and not limited to a conclusory 'check-box' form." (Doc. 8 at 10). However, as the Commissioner points out (Doc. 12 at 15), Plaintiff does not cite to these "extensive treatment notes." (Doc. 8 at 10). The Court has reviewed the record before it and could not find the "extensive treatment notes" to which Plaintiff refers.

From the Court's own review of the record, as the ALJ noted, it appears that the medical opinions of Doctor Poletti are indeed comprised of "checked boxes on a form with minimal explanation" (AR at 22; 1213–15). Dr. Poletti states that Plaintiff is limited to sedentary activity: lifting or carrying up to 10 pounds occasionally, sitting over half the time, and standing or walking occasionally. (*Id.* at 1215). He reports Plaintiff's limitations as "no bending, twisting, lifting, carrying, pushing, pulling, must alternate sitting and standing as needed." (*Id.* at 1214-15). The ALJ found these restrictions were inconsistent with the record since Plaintiff was able to do household chores such as laundry. (*Id.* at 22). The ALJ also stated that the opinion itself held little value since it was mainly comprised of checked boxes on a form with minimal explanations. (*Id.*) Additionally, the ALJ remarked that Dr. Poletti's opinion was not consistent with other evidence in the record where examinations failed to show any debilitating restrictions of Plaintiff's spinal range of motion. (*Id.*)

The ALJ contrasted Dr. Poletti's opinion with the opinions of State agency

reviewing physicians: Doctors Keer and Lee. (*Id*. at 21). Keer and Lee opined that Plaintiff "could perform work at light exertion with postural and environmental limitations." (*Id*.) The ALJ found Plaintiff's ability to do dishes and laundry supported this opinion, but noted that Keer and Lee did not have access to the records received at the hearing level, which showed that additional limitations were warranted. (*Id*.)

From this, the Court concludes that the ALJ met its burden to articulate how persuasive it found Dr. Poletti's medical opinion and explain how it considered the supportability and consistency factors. *See Woods*, 32 F.4th at 792. Moreover, reviewing the whole record, as the Court must, *Orn*, 495 F.3d at 630, the Court has found other evidence in the record that also supports the ALJ's decision. In an Independent Physician Review Recommendation prepared in 2017 for Liberty Mutual Disability and requested by Dr. Poletti, Plaintiff was found to have "no restrictions with sitting or standing but should alternate sitting, standing, and walking every 15 minutes. Walking is restricted to less than 20 minutes continuously and a total of 2 hours in an 8-hour day." (AR at 1222). The reviewer also found that Plaintiff was able to work part-time, 4 hours daily and that her prognosis was good given her response to the prior surgery. (*Id*.) In a different Peer Review Report conducted in 2018 by Dr. Christopher M. Zarro, Plaintiff was found to have no deficit that would suggest an impairment exists. Dr. Zarro stated that Plaintiff could "perform all activities as tolerated, 8 hours per day, 5 days per week without restrictions." (*Id*. at 1230).

Thus, the Court finds that Dr. Poletti's opinion was not supported by or consistent with the relevant objective medical evidence. *See Woods*, 32 F.4th at 791-792 (To properly reject a medical opinion under the substantial evidence standard, the ALJ "must articulate how persuasive it finds all the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings."). The ALJs decision to discredit Dr. Poletti's opinion is supported by substantial evidence.

/ / /

### 3. Dr. Singh

As for Dr. Singh, his opinion suffers from the same defects as Dr. Poletti's. The ALJ also found the opinions of Dr. Singh unpersuasive. (AR at 22). Dr. Singh treated Plaintiff for her migraines every three months and notes that Plaintiff's migraines also cause Plaintiff to experience nausea, vomiting, and visual disturbances. (*Id.* at 833–36, 841–44). Dr. Singh opined that, due to her migraines, Plaintiff would need unscheduled breaks three to four times monthly and would need to rest about twice a month. (*Id.*) The vocational expert ("VE") confirmed that this would preclude Plaintiff from being able to sustain competitive employment. (*Id.* at 58). The ALJ found Dr. Singh's opinions unpersuasive because they are "rendered in check-box form with little explanation" and not consistent with the evidence that Plaintiff graduated from college while suffering from her disability. (*Id.* at 22). In other words, the ALJ concluded that Dr. Singh's opinions were not supported by or consistent with the record as a whole.

Plaintiff argues that the ALJ erred by discounting Dr. Singh's opinion as it is supported by other evidence in the record such as Plaintiff's headache diary and Plaintiff's testimony. (Doc. 8 at 12). Plaintiff also argues that evidence she graduated from college does not undermine Dr. Singh's opinion because she needed extra help to get through school, such as help with notes. (*Id.*) Plaintiff also notes that Dr. Singh was one of Plaintiff's treating providers and submitted treatment notes with an explanation for his ultimate conclusions. (*Id.*)

From this Court's own review of the record, it appears that the medical opinions of Doctor Singh's are comprised of "checked boxes on a form with minimal explanation" like Dr. Poletti, as the ALJ noted. (AR at 22; 833–836, 841–844). Dr. Singh stated that Plaintiff experienced migraines four or more days per month, lasting one to four days each. (AR at 833, 841). Dr. Singh opined that during a migraine episode, Plaintiff would be precluded from performing basic work activities and would need a break. (*Id.* at 835, 843). Dr. Singh assessed that Plaintiff would need unscheduled breaks three to four times monthly and would need one to two days of rest before returning to work. (*Id.* at 835–36,

843–44). Like Dr. Poletti's opinion, the ALJ also contrasted Dr. Singh's opinion with the opinions of Doctors Keer and Lee; who opined that Plaintiff "could perform work at light exertion with postural and environmental limitations." (*Id*. at 21).

From the above, the Court finds that the evidence on which the ALJ relied to reach its conclusion is susceptible to more than one rational interpretation, therefore, the ALJ's conclusion must be upheld. *See Thomas*, 278 F.3d at 954 ("[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). The ALJ is responsible for resolving conflicts in the testimony, determining credibility, and resolving ambiguities. *Andrews*, 53 F.3d at 1039. The ALJ weighed the evidence and found Doctors Poletti and Singh were unpersuasive based on the supportability and consistency of their opinions. (AR at 22). This Court will not reweigh the evidence on appeal. *See Trejo v. Colvin*, 2016 WL 769106, at *3 (C.D. Cal. Jan. 28, 2016) ("This Court does not reweigh the evidence or act as a next-level fact-finder on appeal; its appellate review is limited to determining whether the agency committed reversible legal error."). Accordingly, the ALJ's decision to discredit Dr. Singh's medical opinion is supported by substantial evidence.

### B.     Plaintiff's Symptom Testimony

Plaintiff next argues the ALJ erred by rejecting her symptom testimony without providing specific, clear, and convincing reasons supported by substantial evidence. (Doc. 8 at 13). Plaintiff states that the ALJ did not identify which particular findings were inconsistent with any of the specific functional deficits she testified to. (*Id.*) Not so.

#### 1.     Legal Standard

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks

omitted)). Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) *superseded on other grounds by* 20 C.F.R. § 404.1502(a). "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015.

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings of the Plaintiff's credibility are insufficient. *Id*. "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "an ALJ [is not] required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id*. (quoting *Lingenfelter*, 504 F.3d at 1040). Additionally, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain [or symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Nor can an ALJ "effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 495 (9th Cir. 2022).

**2.     The ALJ's Findings are Supported By Substantial Evidence**

Plaintiff testified that she stopped working in June of 2016 due to an accident that required spinal surgery. (AR at 41). Plaintiff was on short-term disability for three months and had several restrictions for over a year. (*Id*.) Plaintiff was terminated from her health

1 care job due to her inability to perform certain duties, so she went back to school. (*Id*.)
2 Plaintiff testified that she continued to struggle with migraines during school, which were
3 exacerbated by computer strain. (*Id*. at 42). She also testified that she had experienced
4 migraines since she was a child but that they became much more noticeable after her 2015
5 car accident. (*Id*.) Plaintiff also stated that she had classmates help her by sending her
6 notes for lecture-based classes and that, after class, she would have to sleep for a few hours
7 due to fatigue. (*Id*.) Plaintiff told the ALJ that she has days where her pain level is between
8 a seven to nine out of a scale of ten and that movement makes it worse but that her heating
9 pad and medication relieve the pain. (*Id*. at 44). Plaintiff also stated that she has driven to
10 Michigan with her father, but that he drives most of the way so that she can stretch, lay out,
11 and medicate and that they usually must stop every sixty miles to get out and stretch.
12 (*Id*. at 46). Plaintiff also testified that she could perform various household chores, but that
13 she needs help from her father. Her father "bring[s] down" laundry for her to fold and puts
14 away dishes she washes that go in lower cabinets so that she does not have to bend over.
15 (*Id*. at 47).

16 At step-one, the ALJ found that medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms; but at step-two, her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR at 19). The ALJ stated that the evidence was not persuasive that Plaintiff experienced disabling limitations during the relevant time. (*Id*.) The ALJ reasoned that lumbar x-rays showed she had a stable-appearing anterior fusion at L4-5 and L5-S1. (*Id*.)  The ALJ further reasoned that Plaintiff's provider noted Plaintiff felt "quite well" after her surgery and that she "maintained adequate or normal range of motion in her lumbar spine during several examinations, which does not support her allegations of complete inability to bend." (*Id*.)

27 Plaintiff argues that the ALJ failed to identify particular findings inconsistent with
28 any of the specific functional deficits she described at the hearing. (Doc. 8 at 13). The

- 12 -

Commissioner argues that the ALJ identified several specific pieces of evidence that contradicted her claims about the severity of her impairments, including Plaintiff's daily activities and the relevant medical evidence in the record. (Doc. 12 at 9). The Court agrees with the Commissioner.

Because a plaintiff's failure to fully corroborate their testimony with the objective medical evidence is "not a clear and convincing reason for rejecting it," the ALJ must have supported its decision with other factors. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."). The ALJ sufficiently did so when noting that Plaintiff's daily activities were inconsistent with her alleged symptoms. (AR at 20). The ALJ mentioned Plaintiff's ability to do household chores such as laundry, cooking, and dishes with some assistance from her father. (*Id.*) The ALJ also heavily relied on evidence that Plaintiff attended and finished college courses online and in person during the relevant time—eventually earning an associate degree. (*Id.* at 20–21). From this, the ALJ concluded that Plaintiff was "more able than alleged." (*Id.* at 21). The ALJ further noted that in February of 2017, Plaintiff attended school full time and was trying to walk as much as she could. (*Id.* at 20).

The ALJ findings that Plaintiff's testimony was not "entirely consistent" with other evidence in the record are specific, clear and convincing, and supported by substantial evidence. The Court "does not read the ALJ's 'not entirely consistent' statement [ ] as requiring Plaintiff to fully corroborate her symptom testimony with objective medical evidence. Instead, the ALJ's statement merely notes that the record contains conflicting evidence." *McPherson v. Comm'r of Soc. Sec. Admin.*, 2021 WL 3709845, at *7 (D. Ariz. Aug. 20, 2021). Because the ALJ found that Plaintiff "engages in daily activities [that are] inconsistent with [her] alleged symptoms," her decision to "reject" Plaintiff's symptom testimony is supported by substantial evidence. *Molina*, 674 F.3d at 1112 (internal citations omitted).

///

### C.     Lay Witness Testimony

Plaintiff next argues that the ALJ improperly rejected testimony from third-party sources. (Doc. 8 at 15–16). Plaintiff's two friends and father each submitted a third-party "Activities of Daily Living Questionnaire" on Plaintiff's behalf. (AR at 229–235, 236–242, 267–273). Plaintiff's friend T.C. stated that Plaintiff spends very little time with friends because she has severe headaches, chronic back pain, and has to spend most of her time sitting in a recliner near her medications and with a heating pad. (*Id.* at 229). T.C. also noted that Plaintiff has to take medication and various breaks to clean her house and that she completes tasks over the course of several days. (*Id.*) Plaintiff's father stated that she sometimes needs help washing her hair, needs to take breaks to lie down during the day because of headaches and struggles to do household chores a little at a time because of her back pain. (*Id.* at 236). Plaintiff's father also noted that he has to help her carry the laundry basket as she cannot do it herself. (*Id.*)

The ALJ rejected these statements from Plaintiff's friend and father because they were "not consistent with nor supported by the objective medical evidence." (AR at 22). To reject third-party reports of a claimant's impairments, the standard is much lower: an ALJ need only "give reasons that are germane to each witness." *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017). Plaintiff argues that the ALJ erred in evaluating the lay witness testimony because it failed to base the rejection of the lay witness statements on the record and to give specific and legitimate reasons germane to each witness. (Doc. 8 at 16). The Commissioner argues that the ALJ properly articulated a germane reason for discounting these reports because the reports were not consistent with objective medical evidence in the record. (Doc. 12 at 20).

The Court finds *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) instructive. There, the Ninth Circuit held that "the ALJ should not have discredited [the third-party] testimony on the basis of its relevance or irrelevance to medical conclusions." *Id.* The reason for this is because third-party witnesses are not usually medically trained. *See id*; Fed. R. Evid. 701 (stating that a witness may testify in the form of an opinion "rationally

- 14 -

based on the witness's perception"). Under *Bruce*, the ALJ erred in summarily rejecting Plaintiff's proffered testimony exclusively because it was unsupported by the medical evidence. However, the error is harmless where the statement of a third party does not describe limitations in excess of what the plaintiff described, and where the ALJ properly rejected the plaintiff's symptom testimony citing clear, convincing reasons supported by substantial evidence. *Molina*, 674 F.3d at 1122.

As stated above, the Court found that the ALJ provided clear and convincing reasons for rejecting Plaintiff's symptom testimony. *See supra* Section III.B. Furthermore, the third-party statements, collectively and individually, replicate much of Plaintiff's testimony. Plaintiff testified that she needs help from her father to complete household chores and that classmates helped her by sending her notes for classes that she took in college. (AR at 44–47). Plaintiff also testified to the severity of her migraines and occipital neuralgia, including her need for a heating pad, medications and her inability to sit for too long on road trips. (*Id.*) The third-party statements do not describe limitations in excess of what Plaintiff herself described, therefore, any error with respect to the third-party statements being discredited was harmless. *See Molina*, 674 F.3d at 1122.

### D. The ALJ's Hypothetical

Plaintiff last argues that hypothetical questions posed to the VE were erroneous as they did not account for all of Plaintiff's limitations. (Doc. 8 at 17). A hypothetical question posed to a VE must "include all of the claimant's functional limitations, both physical and mental." *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995). The hypothetical should "be accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. However, it is appropriate for an ALJ to limit a hypothetical to only those functional limitations that are supported by substantial evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989). An ALJ is not "bound to accept as true the restrictions set forth in the [ ] hypothetical question if they were not supported by substantial evidence." *Osenbrock v. Apfel*, 240 F.3d 1157, 1164–65 (9th Cir. 2001).

At the hearing, the ALJ asked the VE whether an individual with the same age, education, work experience, and RFC as Plaintiff, could perform the occupations of office helper, cashier II, and photocopy machine operator, for a total of 330,000 jobs nationally. (AR at 56–58). The ALJ specifically asked the VE:

> I would like you to please assume a hypothetical individual of the claimant's age, education and vocational background starting with the state agency opinion. This is an individual who can lift and/or carry up to 20 pounds occasionally, lift and/or carry up to ten pounds frequently, she can stand and/or walk for four hours in an eight hour day and sit for six hours per eight hour workday with normal breaks. No climbing ladders, ropes or scaffolds. The hypothetical individual can occasionally climb ramps or stairs, occasionally stoop, crouch, kneel, occasionally balance as defined in the DOT. Overhead reaching bilaterally is occasionally, the hypothetical individual can work with occasional concentrated exposure to non-weather related extreme cold, non-weather related extreme heat, occasional exposure to excessive loud noise, occasional exposure to excessive vibration, occasional concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases and poorly ventilated areas, occasional exposure to dangerous moving machinery, as well as unprotected heights. Can this individual perform her past work?

(*Id*. at 56–57). The VE responded "No, Judge." (*Id*. at 57). The ALJ then asked the VE whether there was "any work available in the national economy for the hypothetical individual?" to which the VE responded "light, unskilled work." (*Id*.) The VE then clarified that "office helper," "cashier [] with a stool" and photocopy operator could be performed by the hypothetical individual and exist in excess in the national economy. (*Id*.) The ALJ asked the VE if a need to wear sunglasses inside while working would preclude the hypothetical individual from these jobs and the VE stated it would not. (*Id*. at 58). The ALJ finally asked the VE whether a need to take regularly scheduled breaks, at least one for an additional hour, would preclude her ability to work. (*Id*.) The VE stated that would not amount to competitive employment. (*Id*.)

Based on these questions, the ALJ found that the VE's testimony was consistent with the information in the Dictionary of Occupational Titles. (*Id*. at 24). After considering all the evidence from the hearing and in the record, the ALJ found that "through the date

last insured, considering [Plaintiff's] age, education, work experience, and [RFC], [she] was capable of making a successful adjustment to other work that existed in significant numbers in the national economy" and found Plaintiff not-disabled under the Act. (*Id.*)

Plaintiff essentially argues that this hypothetical was erroneous because the ALJ did not include limitations alleged by Plaintiff, her doctors, or her friends and family. (Doc. 8 at 17). But, as decided above, the ALJs decision to discount such limitations are supported by substantial evidence in the record. *See supra* Sections III.A–C. The ALJ's hypothetical set out all the limitations and restrictions relevant to Plaintiff's RFC and the ALJ cannot be said to have erred. *Tackett*, 180 F.3d at 1101. Indeed, as the Commissioner notes, the ALJ presented a hypothetical to the VE consisting of limitations that were supported by substantial evidence in the record, therefore, the hypothetical was proper. (Doc. 12 at 22 (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("The hypothetical that the ALJ posed to the [VE] contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record. The ALJ's reliance on testimony the [VE] gave in response to the hypothetical therefore was proper.")).

**IV.   Conclusion**

For the reasons set forth above, the Court concludes that substantial evidence supports the ALJ's non-disability determination.

Accordingly,

**IT IS HEREBY ORDERED** that the January 21, 2022, decision of the Administrative Law Judge (AR at 14–25) is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 29th day of March, 2024.

Honorable Diane J. Humetewa
United States District Judge